UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRETT V. HORN,

       Plaintiff,

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

Civil No. 05-783-HA
OPINION AND ORDER

HAGGERTY, Chief Judge:

Plaintiff Brett Horn seeks judicial review of a final decision by the Commissioner of the

Social Security Administration denying his application for Supplemental Security Income (SSI)

disability benefits under Title XVI of the Social Security Act. This court has jurisdiction to

review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the

Commissioner's decision is affirmed.

1- OPINION AND ORDER

## BACKGROUND

Plaintiff was born on November 2, 1962.  He completed the eighth grade and worked as a dish washer, shop helper, car lot person, delivery driver, truck washer, and fruit harvest worker. He stopped working in November 1999 because of back pain.

He applied for SSI benefits on April 19, 2001.  In this application he alleged disability since January 1, 2000, based on Hepatitis C and back pain.  He later also complained of carpal tunnel and mental health problems.  He was denied benefits initially and upon reconsideration.

An Administrative Law Judge (ALJ) conducted a hearing on December 11, 2003.  The ALJ heard testimony from plaintiff, who was represented by an attorney; plaintiff's girlfriend, Jena E. Carr; and a vocational expert (VE), Frances P. Summers.  The ALJ issued a written decision dated March 13, 2004, finding that plaintiff had the residual functional capacity (RFC) to perform a significant range of light work, that there are significant numbers of jobs in the national economy that he could perform, and that plaintiff is not disabled within the meaning of the Social Security Act. The Appeals Council denied plaintiff's request for review on March 22, 2005, making the ALJ's conclusions the Commissioner's final decision.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 USC § 405(g), *Batson v. Comm'r of Social Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

2- OPINION AND ORDER

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the evidence. *Batson*, 359 F.3d at 1193.

## DISABILITY STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner employs a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520. Each step is potentially dispositive.

At step one, the ALJ determines whether the claimant is performing substantial gainful activity (SGA). If claimant is performing SGA, the claimant is not disabled. 20 C.F.R. §§ 404.1520(4)(I), 404.1520(b), 404.1571, 404.1574(a). If the ALJ so finds, the ALJ proceeds no further. *Yuckert*, 482 U.S. at 140.

If the claimant is not performing SGA, the ALJ proceeds to step two, at which the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(4)(ii). If the claimant does not have such a severe impairment, he or she is not disabled. *Id.*

3- OPINION AND ORDER

At step three, the ALJ determines if the claimant's severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(4)(iii). If the impairment is determined to meet or equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform his or her past relevant work at step four, or perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. 404.1520(a)(4)(v).

As noted above, the initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id.* If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

## SUMMARY OF ALJ'S FINDINGS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 22,[1] Finding 1.

---

[1] Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

4- OPINION AND ORDER

At step two, the ALJ found that plaintiff had severe impairments: degenerative disk disease, impingement syndrome at the right shoulder, hepatitis C, a history of alcohol dependence, posttraumatic stress disorder, and panic disorder with agoraphobia. Tr. 22, Finding 2. Plaintiff objects to the ALJ's step two analysis because the ALJ also concluded that plaintiff's additional impairments involving carpal tunnel syndrome, cubital tunnel syndrome, and ulnar neuropathy were not sufficiently severe.

At step three, the ALJ found that plaintiff's severe impairments did not meet or equal the requirements of a listed impairment. Tr. 22, Finding 3.

At step four, the ALJ found that plaintiff was unable to perform his past relevant work. Tr. 22, Finding 6. The ALJ so found after determining that plaintiff maintained the RFC to perform a significant range of light work. The ALJ's RFC assessment provided in part:

> claimant is limited from lifting and carrying more than 10 pounds frequently with an occasional 20 pounds maximum. He is unable to climb ladders. He is limited to occasionally stooping, bending, kneeling, crouching, and crawling. He needs an occasional opportunity to get off his feet and change position. He is unable to work with the public and teamwork should be minimized.

Tr. 22.

The ALJ acknowledged that plaintiff is able to handle only "limited" social contact and incorporated such restrictions into plaintiff's RFC. Tr. 20. However, the ALJ concluded that "there is no objective clinical data indicating that the claimant has significant cognitive impairment, difficulty handling routine daily activities, and living independently." Tr. 20. Therefore, the ALJ excluded mental restrictions beyond moderate social limitations.

5- OPINION AND ORDER

The ALJ acknowledged that plaintiff might have some "residual effects" of carpal tunnel surgery that might render him unable to perform arduous physical exertion using his upper extremities. Tr.18. However, the ALJ believed the general physical restrictions found by the Disability Determination Service (DDS)[2] staff, which limited plaintiff to light and sedentary work, adequately incorporated such limitations.

At step five, the ALJ found that, because of plaintiff's RFC, he could perform work existing in the national economy. Although plaintiff's exertional limitations preclude a full range of light work, the ALJ found that there are significant numbers of jobs in the national economy that he could perform, such as assembler of small products, hardware assembler, and blind stitch machine operator. Tr. 22-23, Finding 11. The ALJ concluded that plaintiff was not disabled as defined by the Social Security Act and, therefore, ineligible for SSI payments.

## DISCUSSION

Although plaintiff's brief is unclear in some respects, and the court was deprived of the benefit of a Reply brief from plaintiff, it appears that plaintiff challenges the ALJ's evaluation of the evidence and alleges errors at steps two, three, and five of the ALJ's analysis. Specifically, plaintiff alleges that (1) the ALJ erred in concluding that plaintiff's carpal tunnel syndrome, cubital tunnel syndrome, and ulnar neuropathy were impairments that fell short of qualifying as severe; (2) the ALJ failed at step three of the sequential evaluation process to determine correctly whether plaintiff's severe impairments or combination of impairments met or equaled a Listing; (3) the ALJ erred by rejecting the lay testimony of plaintiff's therapist Kathleen Kinsey and

---

[2]Disability Determination Services is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

6- OPINION AND ORDER

plaintiff's girlfriend Jena E. Carr; (4) the ALJ improperly discredited plaintiff's testimony and

other subjective complaints; and (5) the ALJ erred in determining plaintiff's RFC and

employability. These arguments are addressed in turn.

## I.    The severity of plaintiff's other impairments.

Plaintiff argues that the ALJ erred in failing to add carpal tunnel syndrome, cubital tunnel

syndrome, and ulnar neuropathy as severe impairments suffered by plaintiff. Tr. 22. Non-severe

impairments are those that does not significantly limit a claimant's physical or mental ability to

do basic work activities. *See* 20 C.F.R. § 416.921(a); *see also Yuckert*, 841 F.2d at 306 (an

impairment or combination of impairments is found "not severe" when the evidence establishes

that the impairment is a slight abnormality that has no more than a minimal effect on an

individual's ability to work). "Basic work activities" include walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking;

understanding, carrying out, and remembering simple instructions; use of judgment; responding

appropriately to supervision, co-workers and usual work situations; and dealing with changes in a

routine work setting. *See* 20 C.F.R. §§ 416.921(b)(1)-(6).

Conversely, an impairment is "severe" if it significantly limits an individual's ability to

perform basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); SSR 96-3p.

The ALJ acknowledged that plaintiff suffered from carpal tunnel syndrome, cubital tunnel

syndrome, and ulnar neuropathy. The ALJ noted that these conditions were "established by

testing in March 2003," and were treated with surgery in October and November 2003. Tr. 17-

18. The ALJ concluded that the evidence suggested there was "every expectation of

improvement within twelve months," so these conditions were "regarded as being nonsevere."

Tr. 17. The ALJ examined the relevant medical evidence, noting that plaintiff's physician, Gary Hansen, M.D., found no significant motor deficits, and only slightly compromised grip strength. Tr. 18. Plaintiff's orthopedic surgeon, David Appleby, M.D., indicated that plaintiff would achieve post-surgical stability within weeks of his bilateral carpal release surgeries. Tr. 18.

The burden to establish the existence of a severe impairment that prevents a claimant from performing substantial gainful activity rests with the claimant. *Tackett*, 180 F.3d at 1098. The burden also includes establishing that the severe impairments or impairments lasted (or will last) for at least twelve continuous months. *See* 20 C.F.R. §§ 416.905, 416.912. Medical evidence is essential for assessing the impacts of a claimant's impairments upon his or her ability to do basic work activities. *See* SSR 85-28.

The ALJ concluded correctly that plaintiff failed to meet his burdens of proof as they pertain to his impairments involving carpal tunnel syndrome, cubital tunnel syndrome, and ulnar neuropathy. There is no medical evidence establishing that plaintiff's bilateral carpal tunnel surgeries were unsuccessful. While the ALJ noted that plaintiff may have residual effects from his carpal tunnel surgeries that could reduce his capacity to maintain arduous physical exertion, such effects were incorporated within the scope of plaintiff's limitations to light and sedentary work, which were set by DDS staff, and recognized by the ALJ. Tr. 18. Accordingly, because plaintiff failed to establish that he had severe impairments of carpal tunnel syndrome, cubital tunnel syndrome, and ulnar neuropathy, the ALJ's findings at step two were supported by substantial evidence in the record and free of legal error.

///

///

8- OPINION AND ORDER

## II.     Listed impairments.

Plaintiff next argues that the ALJ failed at step three of the sequential evaluation process to determine correctly whether plaintiff's severe impairments or combination of impairments met or equaled a Listing.  As noted above, at step three of the disability analysis, the ALJ must determine whether a claimant's impairment meets or equals an impairment contained in the Listing of Impairments (Listings) enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listings describe the symptoms, signs, and laboratory findings that comprise the characteristics of each listed impairment.

Unless the regulations state a specific time period required for a claimant's impairment to meet a listing, the evidence must show that the claimant's impairment has lasted, or is expected to last, for a continuous period of at least twelve months.  20 C.F.R. § 416.925(c)(4).

The ALJ must "evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

### 1.     Listing 1.04

Plaintiff first asserts that his impairments should have been found to meet or equal Listing 1.04.  The required level of severity to meet Listing 1.04 is established when there are disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with:

9- OPINION AND ORDER

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 1.04.  The ALJ found that plaintiff has "degenerative disc disease of the lumbar and cervical spine." Tr. 18.  Plaintiff provided evidence that he also has facet arthritis.

The ALJ adequately addressed the evidence pertaining to Listing 1.04 when he acknowledged that DDS physicians found plaintiff capable of performing light work, and that no other medical caregiver has suggested that plaintiff's ability to do light and sedentary work is or would be significantly compromised due to orthopedic problems. Tr. 18.  The record lacks evidence of nerve root compression, motor loss or atrophy of plaintiff's muscles, or any other kind of significant impairment required under subsections A, B, or C of Listing 1.04.  The ALJ also referred properly to evidence that plaintiff exercised regularly, engaged in wrestling with another adult, and was able to camp for four days. Tr. 19.  This court concludes that the ALJ

found correctly that although plaintiff's spinal impairments were severe, they were not severe

enough to meet or equal, either alone or in combination, Listing 1.04.

### 2.    Listing 5.05

Plaintiff also asserts that his impairments should have been found to meet or equal Listing

5.05 (chronic liver disease) due to his diagnosis of Hepatitis C.  This Listing requires a claimant

to meet the following criteria:

> 5.05 *Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis;*
> *chronic active hepatitis; Wilson's disease)*. With:
>
> \* \* \*
>
> F.  Confirmation of chronic liver disease by liver biopsy (obtained
> independent of Social Security disability evaluation) and one of the
> following:
>
> 1. Ascites not attributable to other causes, recurrent or persisting for
> at least 3 months, demonstrated by abdominal paracentesis or
> associated with persistent hypoalbuminemia of 3.0 gm. per deciliter
> (100 ml.) or less; or
>
> 2. Serum bilirubin of 2.5 mg. per deciliter (100 ml.) or greater on repeated
> examinations for at least 3 months; or
>
> 3. Hepatic cell necrosis or inflammation, persisting for at least 3 months,
> documented by repeated abnormalities of prothrombin time and enzymes
> indicative of hepatic dysfunction.

In July 2001, plaintiff's liver biopsy confirmed "chronic Hepatitis with minimal activity

(Grade I) and septal fibrosis (Stage III) and also micro and macrovesticular steatosis."  Tr. 122.

Only mild inflammation was detected.  *Id*.  One medical entry indicates that plaintiff's

prothrombin time was elevated at 12.6.  There is no documentation of "repeated abnormalities,"

as required by the regulations.

As noted above, the DDS physicians found that plaintiff was capable of performing light work. This was not contradicted by any other medical caregiver. The ALJ correctly determined that plaintiff's liver function tests revealed only mild abnormalities. Tr. 18.

In December 2002, plaintiff's liver function appeared to have improved spontaneously. Tr. 19, 161. Five months later, plaintiff's physician reported that he was doing well with respect to his Hepatitis C infection. Tr. 19, 158.

Plaintiff argues unpersuasively that his diagnosis of orthopedic problems and Hepatitis C should be sufficient to sustain a finding of disability. However, a diagnosis of a listed impairment must be accompanied by findings that are required in the Listings for that impairment. *Marcia v. Sullivan,* 900 F.2d 172, 132 (9th Cir. 1990); *see also* 20 C.F.R. § 416.925(d). Put differently, to meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990); *Tackett*, 180 F.3d at 1099; *see also* 20 C.F.R. § 416.925(c)(3).

This court concludes that the ALJ correctly concluded that although plaintiff's impairments were severe, they were not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed for digestive system impairments found under Listing 5.00.

**III.    The lay testimony evaluation.**

An ALJ need only give germane reasons to reject lay witness testimony. *See Lewis*, 236 F.3d at 511; *see also Smolen*, 80 F.3d at 1288. Plaintiff argues that the ALJ erred by improperly rejecting the opinions of his therapist Ms. Kathleen Kinsey, M.S., and his girlfriend Jena E. Carr.

12- OPINION AND ORDER

In November 2001, plaintiff began treatment at Josephine County Mental Health Services. He saw Ms. Kinzie regularly up to the time of the hearing. Kinzie prepared a mental RFC assessment of plaintiff in June 2003 in which she found his mental abilities to be "fair" or "poor or none" in most of the rated categories. Tr. 153-54. She stated that plaintiff has low stress tolerance, persistent intrusion symptoms, hyper-vigilance, persistent anxiety, anger outbursts, and panic attacks when he is in situations outside his home. Tr. 154. She opined that plaintiff has difficulty with attention and is most efficient working alone in a familiar environment. He also has signs of major depression and is easily frustrated, anxious, and fearful of being harmed by others. *Id*.

The regulations require evidence from "acceptable medical sources" in order to establish a medically determinable impairment. 20 CFR § 416.913(a). Acceptable medical sources include licensed physicians and licensed or certified psychologists. *Id*. Kinzie is not a licensed physician nor a certified or licensed psychologist, and her qualifications to make medical functional findings are limited. The regulations allow the ALJ to consider evidence from "other sources," including therapists, to show how the claimant's impairment affects his ability to work. 20 CFR § 416.913(d)(1). Here, the ALJ accepted aspects of Kinzie's opinions, specifically that plaintiff is able to handle only limited social contact and incorporated such restrictions into plaintiff's RFC.

While plaintiff may suffer from some mental impairment, the ALJ did not err in rejecting Kinzie's other opinions about plaintiff's functional limitations. The ALJ noted that Kinzie described functional limitations that were so severe that plaintiff's ability to live independently could be questioned. The ALJ reasoned, "[i]t is unlikely that an individual limited to the extent

13- OPINION AND ORDER

found by Ms. Kinsey would be able to function as a responsible parent, much less live independently on his own." Tr. 22. The ALJ also determined that her opinions were inconsistent with her treatment records and other evidence in the record, and provided sufficiently germane reasons for the disposition of Kinzie's opinions because plaintiff "appears to be more active and comfortable leaving the confines of his home than [Kinzie's] assessment indicates." Tr. 20.

Jena E. Carr had lived with plaintiff for almost seven years at the time of the hearing. She testified that he has problems sitting and watching television because his back and legs begin hurting. She testified that plaintiff is unable to do activities that he used to do because he drops things and bending over too much hurts his back.

She also testified that plaintiff becomes agitated by others. Plaintiff has a tendency to deal aggressively with others. He sometimes goes with her on errands or shopping, but there have been times when he had to leave the store because he was uncomfortable.

The ALJ gave little weight to Carr's testimony because, as discussed below, most of the functional limitations Carr attributed to plaintiff could not documented in the medical record. Tr. 19. The ALJ correctly concluded that this testimony was inconsistent with the record, providing germane reasons rejecting Carr's testimony. *Id*.

## IV. Plaintiff's Testimony.

Plaintiff next asserts that the ALJ erred in evaluating plaintiff's testimony. If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81

14- OPINION AND ORDER

F.3d 821, 834 (9th Cir. 1995) (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen*, 80 F.3d at 1281-82 (citation and quotation omitted).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407.

Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom. This means that the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof:

> Nor must the claimant produce objective medical evidence of the causal
> relationship between the medically determinable impairment and the symptom.
> By requiring that the medical impairment "could reasonably be expected to
> produce" pain or another symptom, the *Cotton* test requires only that the causal
> relationship be a reasonable inference, not a medically proven phenomenon.
> Finally, the claimant need not show that her impairment could reasonably be
> expected to cause the severity of the symptom she has alleged; she need only
> show that it could reasonably have caused some degree of the symptom. This
> approach reflects the highly subjective and idiosyncratic nature of pain and other
> such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony
> under the *Cotton* analysis simply because there is no showing that the impairment
> can reasonably produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Bunnell*, 947 F.2d at 347-48).

In addition to medical evidence, factors relevant to the ALJ's credibility determination

include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her

symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects

of any medication; treatment, other than medication; measures used to relieve symptoms; and

functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts

in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. In determining that subjective

testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
> lying, prior inconsistent statements concerning the symptoms, and other testimony by the
> claimant that appears less than candid; (2) unexplained or inadequately explained failure
> to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's
> daily activities.

*Id.* (citations omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or

combination of impairments *could reasonably be expected to* (not that it did in fact) produce

some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In this case, plaintiff produced some objective medical evidence regarding his impairments. However, the ALJ also referred to clear and convincing evidence in the record supporting the ALJ's ultimate rejection of plaintiff's testimony about his ability to work. An ALJ may consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ examined the relevant medical reports extensively before concluding that plaintiff's testimony regarding the impact of his impairments was unsupported by the medical evidence. The ALJ acknowledged that plaintiff's condition included residual fatigue and other symptoms of acute liver inflammation, and included these issues in deciding to restrict plaintiff to light and sedentary work. Tr. 19.

As noted above, the ALJ also cast doubt upon plaintiff's RFC-related testimony because plaintiff's – and his girlfriend's – testimony regarding his limitations was inconsistent with other evidence presented in the record and was unsupported in the medical evidence. Tr. 19. Accordingly, such testimony could not be accepted as a reliable basis upon which to establish plaintiff's RFC. *Id*.

The ALJ's analysis also included consideration of plaintiff's failure to re-engage in the "aggressive treatment" plaintiff sought previously when battling his Hepatitis C infection. Tr. 19. These kinds of contradictions between testimony and relevant medical evidence, and specifically

17- OPINION AND ORDER

comparing a claimed impairment against the absence of appropriate medical treatment for that impairment can constitute clear and convincing reasons to reject a claimant's subjective testimony. *See Johnson v. Shalala*, 60 F.3d 1428, 1433-1434 (9th Cir. 1995).

Moreover, there is evidence that plaintiff enjoys numerous activities of daily living that suggest clearly that he is not as limited as he testified. This evidence includes descriptions of plaintiff engaging in races with his children, Tr. 111, and exercising, wrestling and camping, Tr. 103. An ALJ may properly consider a claimant's activities of daily living when assessing his or her credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002).

The ALJ also referred to inconsistencies in various statements made by plaintiff. The ALJ noted that plaintiff told his therapist that he acquired his Hepatitis C infection from a blood transfusion, but acknowledged to a nurse practitioner in November 2000 instead that he had engaged in drug use and high-risk sexual behavior. Tr. 19. The ALJ also questioned plaintiff's portrayal of his earnings history, pointing out that plaintiff's records demonstrated earnings to the contrary, and that in his disability report plaintiff disclosed periods of regular full-time work. Tr. 19, 68-69.

The ALJ correctly identified some inconsistencies in plaintiff's statements and his earnings record. Plaintiff had meager wage postings from 1979 through 1981, no wages between 1982 and 1984, meager wages for 1985 through 1990, no wages for 1991 through 1996, and meager wages for 1997 through 2000. In his disability report, plaintiff listed work from 1979 through 1981 with no jobs between December 1881 and December 1988, some work in 1990, no jobs between May 1990 and August 1997, some work in 1997, some work in late 1998-early 1999, and some work in late 1999.

18- OPINION AND ORDER

The ALJ also noted that plaintiff failed to mention any mental impairment when he filed his disability application. The ALJ correctly observed that this was a remarkable omission for an individual claiming to have been disabled by panic attacks and other anxiety symptoms for the past twenty years. Tr. 20. This court concludes that plaintiff's credibility was evaluated properly in light of the lack of medical evidence to support the severity of limitations he claimed, and given the number of inconsistencies between the record and plaintiff's statements and testimony. Accordingly, the ALJ's finding that plaintiff's testimony regarding his disability was not totally credible is upheld. Tr. 22. The ALJ offered clear and convincing reasons for rejecting plaintiff's allegation of disability, and these reasons are supported by substantial evidence.

## V.    RFC determination.

Plaintiff next objects to the ALJ's RFC analysis, contending that the ALJ omitted or improperly discounted limitations related to gripping and performing fine manipulation. Plaintiff argues that the ALJ improperly relied on evidence that was not in the record, and that the ALJ's findings concerning his RFC were not supported by substantial evidence. Specifically, plaintiff objects that nothing in the RFC assessment addresses his fatigue problems associated with Hepatitis C.

As noted above, the ALJ viewed plaintiff's carpal tunnel and ulnar nerve conditions as nonsevere for the required minimum twelve month period of time. However, the ALJ accepted that plaintiff "might have some residual effects of carpal tunnel surgery that might render him unable to perform arduous physical exertion using the upper extremities." Tr. 18. The ALJ concluded that these limitations are accounted for in the general physical restrictions found by the DDS staff, which limited him to light and sedentary work.

Also as noted above, the ALJ properly found plaintiff's testimony about his problems

with his Hepatitis C infection to be unpersuasive. While plaintiffs medical records are replete

with references to his Hepatitis C diagnosis, they lack any associated functional limitations. In

April 2003, Dr. Mullarkey noted that Horn was "doing well." Tr. 158. Moreover, medical

records submitted after plaintiff's hearing lacked references to any hepatitis problems.

Plaintiff's problems related to his liver are accounted for by his restriction to light and

sedentary work. The medical record contains no functional limitations related to fatigue beyond

those imposed by the RCF assessment. The ALJ's findings regarding plaintiff's RFC was

supported by the medical evidence, free of legal error and is upheld.

Relatedly, plaintiff argues that the ALJ erred by relying upon an inadequate RFC in

developing hypothetical questions for the VE at step five. As noted, the ALJ must determine if

the claimant is capable of performing work existing in the national economy, and can do so by

showing that jobs exist in the national economy within the claimant's RFC.

The ALJ's first hypothetical question to the VE began by describing a person who is

forty-one years old, with an eighth grade education with past work as a shop helper, lot person,

delivery driver, truck washer, fruit harvest worker. Tr. 415. The VE was asked to consider a

prospective employee who is limited from lifting and carrying more than ten pounds frequently,

with an occasional 20-pound maximum. The employee should not climb ladders, and is limited

to occasional stooping, bending, kneeling, crouching, and crawling. The employee needs an

occasional opportunity to get off his feet and change position. He should not work with the

public, and teamwork should be minimized. *Id*.

The VE testified that all past jobs would be eliminated and identified other jobs that would be appropriate, including assembler of small products, hardware assembler, and blind stitch machine operator. Tr. 415-16.

Next, the ALJ asked the VE to consider an individual with moderate difficulty maintaining a reliable, firm grip and performing fine manipulation. Tr. 416. The VE testified that all of the jobs she identified for the original hypothetical question require frequent to continuous fine manipulation, and one needs a firm grip to use power tools in assembly and to hold the material on the blind stitch machine operator. She said the additional limitations would eliminate all of the jobs she had identified. Tr. 417.

The ALJ then asked if the VE could identify other work that would be possible with the additional limitations. After reviewing and considering all of the light jobs she had researched, the VE stated that there has to be either the ability to work with hands or have some sort of public contact. Without one of those, she was unable to come up with any jobs a claimant could do. Tr. 417.

Although the second hypothetical question included limitations that prompted the VE to conclude that a person with such limitations was not employable, the ALJ properly distinguished those additional limitations from the findings that were applicable to plaintiff. The ALJ did not include any limitations in his RFC concerning gripping and fine manipulation because he properly viewed the carpal tunnel problems "as being nonsevere for the required minimum twelve month period of time." Tr. 21.

Plaintiff's additional submissions and arguments regarding these problems are unpersuasive. As noted above, the ALJ correctly concluded that plaintiff failed to meet his

21- OPINION AND ORDER

burdens of proof as they pertain to his impairments involving carpal tunnel syndrome, cubital

tunnel syndrome, and ulnar neuropathy. The ALJ's findings at step two remain supported by

substantial evidence in the record and free of legal error. Accordingly, the ALJ's step-five

analysis was proper.

## CONCLUSION

Based on the foregoing, the findings of the Commissioner are based upon the correct

legal standards and are supported by substantial evidence in the record. The Commissioner's

decision denying plaintiff Brett V. Horn's application  for disability benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this  20  day of October, 2006.

Ancer L. Haggerty

United States District Court

22- OPINION AND ORDER